Kamienski vs. Hendricks Kamienskiv vs. Hendricks May it please the Court. Timothy J. McInnis on behalf of the appellant Paul Kamienski. Two administrative things. One is I'd like respectfully to reserve four minutes of rebuttal time. And the other is by motion the Court granted me the opportunity to use six exhibits during the oral argument. And I have those. They were attached to the motion. They were also. Okay. So I don't need to hand them up. No. Please don't. No more paper. I don't think any of us wants any more paper. No more letters. No more motions. But if they do come make sure they have careful citations on them. Yeah. Right. Right. This is a New Jersey State Prisoner's Appeal for the denial of a habeas petition filed under the ADPA. That petition seeks to vacate convictions for accomplice liability to first degree and felony murder. It's grounded in the due process clause. We understand that. But believe me we are really familiar with this case. But why don't you just go ahead with your argument. The sufficiency of evidence to question of law under D1 or a fact under D2. Yes that's correct. Which? It's both. I'm sorry. The sufficiency of the evidence is under D1 where we say that the State Appellate Court made an unreasonable application of the Jackson standard. And the argument under D2 and E is that the various decision facts finding it may work clearly erroneous. Go ahead. I just wanted to get your view. That with those standards in mind to summarize. So with those standards in mind what you then need to demonstrate to us is that the Appellate Division's decision as to the first degree murders was not just incorrect but also unreasonable under ADPA. That's exactly right. And to summarize my argument it would be that a full and fair reading of the record under the appropriate standards will show not only a complete lack of evidence of accomplice liability on Kaminsky's part but also that his murder convictions were reinstated as a result of the State submitting a false and misleading Appellate Court brief. Thus the proper review of the trial record will illuminate an injustice that shocks the conscience. This is particularly troubling since Kaminsky is currently serving the 20th year of a double life sentence. You mentioned at one point in your supplemental brief the one that you exactly exhibit as a thrift. You mentioned on page 7 that the State concededly the State repeatedly conceded at trial and they have in parentheses and in post trial motions that there was absolutely no evidence of foreknowledge premeditation or coordinated planning on this. The prosecutor made that statement in argument. Was there a motion filed post trial in which that concession was made? I looked for it and couldn't find it. I did find it. Well I'll give you an example. There's a statement that the prosecutor makes in response to the post trial motions that were filed where he says that. But is there any motion, a response to a motion where that concession is made? Yes. I would refer the Court to page 4612 of the supplemental brief. Of the supplemental appendix which was the post trial motion and the Court said, if I could quote, that you indicated to the jury, and I think you had to, that you were correct that there is nothing that suggests by the requisite standard that prior to the afternoon of the 19th he, Kaminsky, knew of and agreed to assist in or conspire to commit a murder, a robbery or murder. And the prosecutor said, I agree. And the Court and the jury so found. The prosecutor, I agree with you. Okay, but that's, I'm trying to find out whether or not there was a pleading or response to a pleading where that concession was made. And I did read that, what you just referred to, I have in front of me now. And the issue I'm wondering in my mind is whether or not that's tantamount to a judicial admission. But nobody really acts upon making that a judicial admission, do they? No. I mean, it's certainly to me, as Judge McKee suggests, it's all the stuff of judicial admission. But it appears nobody actually took the initiative, either at trial or in the post trial proceedings, to have it rendered as such. Totally ignored. For purposes of review. In the state appeals, it's totally ignored. Should I move on to another point? Do you have anything to the contrary? Well, it arose in the context of the motion to dismiss. And it was something that the prosecutor, I think, gave up in order to try to. Well, I'm not sure he should have given it up. The first to have given it up. But nobody took him to task for it. And obviously they should have. Because what the prosecutor did in this case was he sent a charge to the jury, sent an account to the jury that he himself didn't believe in. He had presented and allowed the conspiracy. That issue has really bugged me. If the jury is the finder of fact, and I've read the prosecutor's, that part of the prosecutor's argument, I haven't read the entire argument. But if the prosecutor says that I don't think, not from what I've heard, that there's evidence of X, Y, Z. Well, the prosecutor's not the finder of fact. The jury then goes back, deliberates, considers all the evidence, and the jury concludes beyond a reasonable doubt, well, there is evidence. We're convinced beyond a reasonable doubt of X, Y, Z. Comes back with a verdict convicting. I don't know where that leaves us. I don't know where it gets your client. Well, first of all, the jury came back with a verdict of acquittal on the conspiracy charge. So the jury heard the prosecutor and considered that and ultimately went along with it. But the bigger point is if you consider the Jackson standard, how could a rational juror have found premeditation when the prosecutor who's charged with presenting the case and articulating a theory. Premeditation can arise in an instant, can it? Yes, it can. And the judge is going to tell the jury that this will find as facts, statements of counsel that don't constitute evidence. Why couldn't, in response to your question, why couldn't the jury find that? I'm not sure it's here. It would be irrational for a juror to find premeditation when the prosecutor who's charged with presenting the case says there was none. Well, let's assume that the prosecutor never said such a thing. And you still have the same trial record that you have here. All three members of this panel, interestingly, were state trial court judges here in Pennsylvania. Every one of us under... Our days and our past. Well, for Judge McKee it was much, much longer ago than some of us. But each one of us has had to deal with demurs under Pennsylvania procedure. Each one of us has had to deal with what are called motions in arrest of judgment under Pennsylvania procedure. And I think what you have in New Jersey and what was dealt with here was actually called a judgment at OV. Is that correct? That's correct. Even in the criminal context. So we would hear those with an argument from both sides as to just what the record shows, an iteration of the pieces of evidence that go towards supporting the elements of the charges and why they do or do not give rise to reasonable inferences. So you're the defense. You're before us right now, not as an appeals panel, but as the trial judge. What is your motion to dismiss or what would be a motion for demur under Pennsylvania law? It would be as follows. The accomplished liability statute, which is what's at issue here, but did the state prove the elements of that by proof beyond a reasonable doubt, requires at least some act before or during the commission of the crime. And then you have to go to the other analysis. Was it done with a shared purpose and knowledge and so on? There's not a single fact. First of all, in terms of during the crime, the only testimony came in through the mouth of Jeannie Yerkes and the girlfriend of the shooter who described how the shooter said he single-handedly committed this crime. He shot the people and stole the cocaine. He makes no mention of Kaminsky having been there or having any role. We all know that presence at a crime, presence at the scene, is in and of itself not enough. Tell us what the evidence shows in this record simply to demonstrate presence at the scene. There is no evidence of presence at the scene. At the time of the commission of the crime. Say Nick went first, Barbara didn't suffer. I was going to come to that, Your Honor. What we do have is Donna Duckworth's testimony that Kaminsky said that to her. And it was from that that the court inferred one interpretation of that is that he was an eyewitness. But beyond that, there's no evidence of him being present at the crime. Nothing I could do. He said he couldn't control what happened. It is circumstantial evidence, though, that one could reasonably use to say he's there. That's correct. Now we have a relationship between Duckworth and your client. They did drugs together, didn't they? That's correct. In the sense of using them. All right. But all of a sudden, for some reason, this particular day, he wants her elsewhere. Now, couldn't a jury infer from that that maybe he didn't want her there because something bad was going to happen and he knew something bad was going to happen? And didn't he share in the stolen cocaine? And weren't his towels and blankets arguably used for disposal of the body? Don't you have all that? Yes, you do have all that. However, the court said that he secreted Duckworth because he knew something bad was going to happen. That's not enough. He has to know more than that. Can a jury read into that whenever they want to with reasonable? No, there has to be something in the record. There has to be some evidence of a conversation he had or that he knew that his co-defendant was armed or even that they were intending to rob these people. What if, Mr. McInnis, what if it is a reasonable inference that Mr. Kaminsky knew that not only was there to be a drug deal but that the victims were going to be shot, but there is also a reasonable inference that, in fact, is of equal believability that competes with that other inference? Then what's the impact of that legally? Then there is no proof beyond a reasonable doubt. Isn't that what the Supreme Court said? It's not the rule that when you're faced with conflicting inferences, we must presume the jury resolved the conflict in favor of the prosecution? Isn't that what they said in Jackson? No. They didn't say that. I just quoted from it. It looks to me like it's what they said. Well, that's not what we have here, though. It's not that we have that type of competing inferences. What we have is what the Supreme Court described in, I believe, the Yates case, where you have two equally reasonable inferences drawn. In that situation, the State has not met its burden of proof beyond a reasonable doubt. Another point I'd like to make about the Jackson case is there the facts were uncontested. And there was direct evidence. Here the facts are sharply contested. Just for example, the woman who supposedly had Donna Duckworth at her house denied that. That may be. But, again, juries deal with those things all the time. I just come back to my point that there's absolutely no evidence that Kaminsky did anything during the crime itself, and there's no evidence that he did anything prior to the crime. And the court has to give effect to the fact that the jury acquitted Kaminsky on the conspiracy charge. It would be impossible. That much really helps as much as you seem to think it does, because you can have inconsistent verdicts. In fact, that seems to be kind of a red herring here, because the appellate court seemed concerned that the trial court thought that there couldn't be inconsistent verdicts. I'm not sure that's why this is. I don't think that's why the trial court made a judgment at all. It's more than just an inconsistent verdict. It's that the jury acquitted Kaminsky of the conspiracy charge, meaning that there was no evidence of any agreement. And so when the appellate court said there was something done by prearrangement, for example, dropping Duckworth off, or the district court said that Kaminsky did certain things. Hey, if I come upon you in the hallway later on and you're in the process of killing somebody and I help you do it, I'm an accomplice, aren't I, even though we didn't discuss it ahead of time? Yes, because then there would be evidence of something that you did during the course of the crime itself, which we don't have here. And that could be circumstantial. And you don't dispute that he threatened Duckworth. He said something bad was going to happen if she talked about what happened afterwards, right? I do dispute that that constitutes a threat. He warned her that if both of them. Warned her. He warned her. But he applied it to himself, too. He said if. Yeah, we'll both be in trouble. Right. So that's not a threat. And Duckworth said that she was not threatened by Kaminsky. And the prosecutor during his closing, again, it's not evidence, but I cite it. The prosecutor said it's true that she didn't threaten. But, you know, I've run out of time. I haven't had a chance to go through the exhibits. I did submit a supplemental brief, which I think. You have some. Believe me, we've gone through them in response to them. And you saved about four or five minutes for rebuttal, I think. Right. But the biggest point that I wanted to make with respect to the conduct beforehand is the State relies on a meeting that supposedly took place the evening before the murders. That's what they say constitutes the conduct. They say that. I'm going to ask the state about that. Believe me, I would like to know just what in that meeting myself, what the evidence is that they that they knew ahead of time. Yes. So why don't you hold on and then. All right. Thank you very much. Believe me, you're going to get plenty of time to respond. And your opposing friend, Mr. Mazzarella will also get plenty of time to respond. Thank you very much. Thank you. May it please the court, Samuel Mazzarella, Ocean County Prosecutor's Office, on behalf of the state. I'll start, Your Honors, with. May you stop helping me out with the problem I had as I read your brief and became almost apoplectic. Why would you put in your brief evidence against Kamiensky and then put in parentheses admitted only insofar as Maiano was concerned. And even in your response, you've got at one point evidence that you put in here. And then there's a footnote. The parties discussed a cocaine deal. This is on page two of your response in response to his affidavits. The parties discussed a cocaine deal. This was stricken from the record. If it's stricken from the record, why in the world would you put that in your brief and argue it? And you do that repeatedly throughout your brief. You'll say that the evidence is such and such, and then you put in parentheses admitted only as to co-defendant. Well, I think it's important. It's improper. That's what it is. It's totally improper. I apologize to the court if that's improper, Judge. That was what was done at the state level. That's his point. And that's what caused the state to rule the way they did. Well, in order for us to show concerted action, Your Honor, we have to do – You can't show us concerted action by evidence that's not admissible against your client. Go back and read U.S. v. Bruton. How can you show us evidence against X by relying upon evidence that's only admissible as to A, B, and C? I would respectfully, Judge, I would ask that the court obviously not consider it. You're not going to consider it. I apologize for the error. Well, if you don't want us to consider it, why do you put it in your brief and tell us about it and then ask permission to file an over-length brief? And you did the same thing with the supplemental response. I got the supplemental response. It's accompanied by a motion for an over-length brief. You don't respond to his exhibits. You don't begin to respond to his exhibits until page 22, and then it takes about four or five pages to respond to the exhibits. You'll get a chance to do that today. This case, it seems to me, is a troubling case, and I'm not sure either side has helped us a great deal in the way they've gone about presenting the issues to us. It could also be a very easy case because, I mean, easy in a legal sense and easy even in a factual sense because, as all of our questions have suggested, in terms of state law, this is purely about sufficiency, and we're looking at it simply with the AEDPA overlay. Now, going back to the question I asked your adversary and asking you to put yourself in the position of responding to a motion to dismiss or a motion to demur or even a motion for judgment NOV here, you could iterate in a page or two those facts which constitute direct evidence here of Kamiansky's guilt. In fact, that wouldn't take up very much space at all. And that evidence from which reasonable inferences can be drawn to wit the circumstantial evidence here, all of the pages could be distilled into nothing but that, at least for my purposes here. Mine too. So at least for my purposes, tell me, please, muster your evidence for purposes of responding to this motion to dismiss. What reasonably ties Kamiansky to the shootings, the murders? In a way to get a compass liability for murder. I'm sorry, Judge? Tie it to him in a manner that gives you proof beyond a reasonable doubt of a compass liability for murder, either premeditated murder or felony murder. There's two overlaying principles, Your Honors. First is concerted action, and that shows shared intent. The other is a specific type of concerted action or action which is concerted vis-a-vis the other defendants, but which Kamiansky himself did. The concerted action goes like this. On the 9th, Kamiansky places a phone call to the Boutikaris residence. That's where the victims are staying. On the 10th, they come up. You're going to go through all the businesses where he was setting up a cocaine deal. I don't think there's any doubt, certainly no doubt in my mind, I'd be surprised if my colleagues harbor any doubt at all, that he was involved in advancing a cocaine deal. So let's get past the Labor Day party, get past all the businesses where he's setting up a cocaine deal. Is there anything to show ahead of time he knew they didn't have the money to pay for it? Yeah, Judge, there is. He isolated a witness, a witness who was at drug deals before, many times before. Three kilos? She has testimony that she's with him 24 hours a day. She's always with him. They're like Siamese twins, these two. They never leave one another's side. And then all of a sudden he, if you will, from your perspective, he ditches her for the time while the drug deal goes on. You're arguing that she's always with him when drug deals go down before. Where is there something from which the jury could attach that kind of significance, that she accompanied him on major drug purchases? Well, she never, you know, we don't know whether she accompanied him on major drug purchases. Well, there weren't any. There's no evidence here of any other major drug purchases at all? He ditched her, Your Honor, taking an awful chance. His license was suspended. There was testimony all over the record that said he could never drive. He drove. He took an unusual car. Three hundred of them were made per year with courtesy plates with his initials on them. And he drove. He isolated himself. Let's assume that a jury could, and I think a jury could easily find, he knew that there was going to be a drug sale that night of three kilos, a lot of money. He did not want her to see that. And that's, exactly. The question you're being asked was, where is the evidence that he knew that no money was going to change hands? Here's the evidence. Here's the evidence. He, they lured, he was at, he was at, according to the evidence, he was at the premises, the Elanji premises on the 19th. Duckworth puts him there. The murder's on the 18th. No, the murder's on the 19th, Your Honor. He was there. In order to get there, they had to lure the detournees away from a public place, namely the Holiday Inn and Tom's River. They did that with a change in plans. That last-minute change in plans is crucial. That luring. Don't say they. Please, do not use they. We're not talking third-person plural here. We want third-person singular Kamiansky. I understood, Your Honor. We don't know precisely who was the prime mover in the change of plans, but we know that at the last minute on the 18th, I'm sorry, on the 19th. Well, what do we know Kamiansky knew about the change in plans? We know that Kaminsky knew to be, instead of the Holiday Inn, he knew to be at Alonji's house. He knew to be there. He knew it before the act occurred. He isolated the witness an hour before the drug deal was originally scheduled. Because he knew he had to be there and a large drug deal was going to go down. Well, he knew he had to be there and that more than a large drug deal was going to be made. These people lured these victims. Don't say these people. That's the problem with the darn brief. Someone did, Your Honor. And he was present at the scene. Present at what scene? At the scene of the murders. He was present at the scene and he knew to be present there. And the reason that it was more. . . Now, if you were in trial court, I would ask the reporter to read the question back. I believe the question we've been stumbling around, bumping into occasionally, but pretty much stumbling around for the past ten minutes, was Judge Van Ersch-Antwerpen's question, where on the record is the evidence from which the jury could infer that Kamiansky knew no money was going to change hands. And we started out with the response that got us back into Labor Day and a party on the 10th. Forget all that. I apologize, Judge. It's precisely this, that on the 18th, which was the originally scheduled meeting where the drug deal was supposed to take place, Marzino asked to be picked up by his driver Yerkeson at 8 o'clock. And when he got in the car after the meeting had taken place, he said they wanted to see the money. I'll kill them before I give them any of my money. And where was Kamiansky at that point? Kamiansky was at the Holiday Inn. Duckworth put him there at 6 o'clock. And where was the briefcase, the empty briefcase? The empty briefcase was on Marzino's person. But didn't he leave before that was said? No, Judge, as my brief points out, my supplemental brief points out, they got back to the boat. There's four things that happened at 8 o'clock on the 18th. Four things. Now, you can take Sid Jeffrey's testimony about it was originally scheduled for 6 o'clock and just accept that, like I think the jury did, or you can back into it with four things. The first thing is that Marzino left at 8 o'clock, and he had a gun and no money. The second thing is that – Okay, so where did he leave? Who was – where he left? He left at the Holiday Inn. He left at the Holiday Inn. His driver was told to pick him up at the Holiday Inn at 8 o'clock and don't be late, I'll be carrying. And then she saw a gun in the briefcase with no money. And where was Kamiansky then? He was still meeting at the Holiday Inn? Kamiansky had gotten home, Duckworth testified, to the boat at 8 to 9 o'clock that night. Where was Kamiansky at the time of this meeting at the Holiday Inn? He was – we don't know for sure. Whoa. But Duckworth says they were all together. All three defendants were in each other's company at the Holiday Inn, she says, at approximately 6 o'clock at night. Forget what you know for sure. What does the evidence show? What does the record show about where he was? Well, the record shows he was at the Holiday Inn, that he was speaking with the two other defendants, and that Duckworth was not privy to their conversation. He was there at 6 o'clock and at 8 o'clock a lot of things happened. All the parties on their way home were talking about how this was a bust. Wait, wait, wait a minute. Where is there evidence that Kamiansky was involved in a conversation that this was a bust? Well, what we're – what I'm trying to say – You mean to say that all the parties were talking about on the way home this was a bust? That's what you just said. I don't think that we need to show – Isn't that what you just said? Yes. All the parties? Yes. Where is the evidence to support that or an inference to that effect? The inference goes as follows, Judge. Kamiansky left at 8 o'clock or was – at least we can say he was at his boat between 8 and 9 o'clock. Along with everyone else who left, 8 o'clock was the time when everybody pretty much stuttered. In Henry de Tourne's, the victim's words, when he called Sid Jeffries, he called him at 8 o'clock and said, we're going to do it on the 19th, the next day. Buddy Lehman said that Marzino had previously promised to him to be at his residence between 6 and 8. If Nick Tourne made that call then, the only thing that you could infer from that is that whatever happened inside the holiday inn room did not suggest to anybody who didn't otherwise know that the de Tourne's were going to get ripped off. He's still thinking that they're having trouble getting their money together. That's true. He didn't see a gun, I would assume. Was there anything to suggest that he did? No, he didn't. No, he didn't. So help me again. You said a few minutes ago that all of them were talking about this was going to be a bust. How do you get there? Well, the concerted action, Judge, everyone left at a specific time. Only two hours after Duckworth placed all the defendants in each other's company. And so we can infer, I think it's a reasonable inference, that there was a meeting at the holiday inn. And by the way, as I said at the outset. Let me finish that chain of thought. We can infer that there was a meeting that, go ahead. At the holiday inn with respect to this drug deal that was supposed to have occurred. Now, we can also infer that it was a robbery from the get-go because there was never any money. And that's all throughout the record. We're going around in one huge circle here. Where is the evidence from which a jury could infer that Kamianetsky knew there wasn't going to be any money? That was the question Judge Van Answerpen started. I'm sorry, Your Honors. I'm doing the best that I can to answer your question. That may not be any fault of yours. It may simply be the fault of the record. Yeah, maybe the evidence isn't there. I think that his isolation of the witness, per the change of plans, where they lured the detournees. I'm not going to say they. Someone lured the detournees. The jury could conclude there was going to be a big drug deal, three kilos worth, and that he did not want Duckworth being there. No doubt about that, that's a slam dunk. You're taking that further and saying that everybody knew, and I think that was your term, everybody knew this was going to be a rip-off, a bust. I'm still trying to find out the evidence that allows you to jump over that hurdle, from going from a drug deal that Kamianetsky not only knew about but facilitated, to Kamianetsky knowing that his agenda was not the same as Marziano's agenda. Marziano was planning to rip these folks off. He said he'll kill them before he gets any money. If you could point me to somewhere in the record where Kamianetsky heard that, that would be incredibly helpful, but I haven't heard that yet. And we're still trying to find out what in the record suggests Kamianetsky knew this was going to be a robbery, which would then get you felony robbery, I think, or felony murder. I'm still looking for that. Your Honors, I think that the inferences all taken together, the concerted action, the luring, the isolation of the witness, as Judge Coleman, later Justice Coleman of the New Jersey Supreme Court, said, these are reasonable inferences. And I think that Your Honors will defer in the appropriate case, and I think this is the appropriate case. Under 28-2254-D-1, do you agree that the sufficiency of evidence is a question of law under D-1, defense counsel said? Well, it's a question of a due process question. Certainly that, the constitutional question of law, yes. But I think that that's a little bit different from acting as the trier of fact at the inception. I mean, you respectfully, I think your role is to find whether evidence is sufficient, whether there's anything in the record that's reasonable that the jury can ---- The standard of deference, yes or no, are we under 22-254-D-1 or D-2, or which standard applies? I think it's D-1, Your Honor. Okay. That would be the ---- Go ahead, I don't know. Go ahead, continue. We have a weird situation where the trial judge who sat through all the testimony that we're always told we need to defer to, sees the jury come back with a conviction and then says that he's going to grant the post-verdict motions. The prosecutor who put this case together tells the jury, did Kamiansky know about this being a robbery in a pants? I don't think so. Did Kamiansky know that this was going to be a murder, that Marziano was planning on murdering these folks? I don't think he can find that from the evidence. Says it again in the course of addressing the judge during the course of the post-verdict motions. Was he looking at the same record you're looking at? Judge, I don't think he, respectfully, I don't think he said precisely that. I think what he said was that, I don't believe Kamiansky conspired. I don't believe he agreed with respect to the murder and the robbery. But I don't think he addressed the accomplice portion of it. Well, I'll find it. Actually, this is one area where computers slow in flipping through pages because the appendix is so voluminous it takes this thing about 45 seconds to get to a page. And maybe your opposing counsel has it. You're saying it could still arise. Excuse me. Go ahead. You're saying it could still arise. In other words, he takes part as an accomplice. He helps with the murder. He helps dispose of the body. He does all those things. Right. That's correct, Your Honor. You just didn't agree way ahead of time that that was the way it was going to go. Right. I think that that's what the prosecutor was saying. It's not killing in the course of a felony, so you've got felony murder. The question is do you have the necessary elements for first degree I assume New Jersey is the same as Pennsylvania. Willful, deliberate, premeditated. Right. Sharing in the intent, which we only Would you have to know about the robbery to get felony murder? Well, yeah. Because you would have to share in the intent of the underlying crime, so certainly you would have to know. Right. And it has to be robbery. A drug deal doesn't give you felony murder. Right. That's correct. You know, the I think that the prosecutor's statement was addressed by the district court, which said that it's of no legal consequence. It's strategy. It's argument. When it was very motions, that wasn't strategy.  Right. But in any case, Your Honor. Can a prosecutor in New Jersey drop a charge without court approval? Not that I know of, Your Honor. No, I didn't think he could either. I didn't think he could either. And his remarks are just argument. They're not evidence in the case, are they? Right. And I think the district court correctly pointed that out. I see my time has expired. Is there any other questions?  Not surprisingly. Thank you, Your Honor. Thank you. I did have one. I'm sorry. The continuing nature of the murder. Mr. Mazzarella, what do we do with that? This was the bizarre argument to the jury about, and I'm not sure the court ever stepped in and corrected it, where he talks about the murder is not complete when the murder is achieved, when the person dies. The murder continues. Not the murder, Your Honor. It's the robbery. And the end of a robbery is a question for the jury. And because it's a question for the jury, they could have found that the defendants who were in constructive possession of the loot, so to speak, on the 19th, in back of Alonji's house, when the bodies were being prepared for disposal, that they, as the fact finder, could find reasonably that that was part of a continuing robbery. And that was the point I made in my, I think it was my supplemental brief, or actually the main brief. Okay. Thank you. Thank you. The court had asked for citations with respect to the prosecutor's closing remarks, and those are at supplemental appendix 4345. 4345? Right. Also 4325. That is during the closing, and the comments during the post-trial argument appear at 4611, really through 4625. Both of those set of sites appear on our revised exhibit E in the right-hand column. The court expressed some frustration, I guess, with the amount of papers that have come in and the type of arguments. Well, the quality of the papers, not just the volume alone, but the quality. If we get a lot of really good papers, there's still really good papers, maybe just too many really good papers. When we get a lot of papers that are not very good and not very helpful, it's a lot of stuff that's not very helpful. And when they lack useful citations to the record, they're not very helpful. I've tried my best to have very precise citations to the supplemental appendix. I'm not aware of any errors or typos in mine. If there are, I apologize to the court. If there's anything specific, I'd be happy to address it. But I think that what has happened here and the reason for this is that the truth here is quite simple. The lies to cover it up are tortuous and complex. The simple truth is that there's no evidence that Kaminsky did anything during the homicides themselves, and there's no evidence that he did anything beforehand. The pieces of evidence the court referred to before, the blanket, the knot and so on, all post-date the crime itself and would not be relevant to an accomplice liability analysis. The state is really basing their case and their argument today on this meeting that supposedly took place at the Holiday Inn the night before. It's not just a meeting among the defendants. They say it's a meeting with Kaminsky and the two victims. They make him an active participant at that meeting, and they say that he deliberately lied, they use the word duped, lured the victims to their death the next day. And what I've said or I've tried to say, and I'll say it now in simple terms, that is a complete fantasy. Kaminsky did not meet with the victims any time on that day, let alone at the Holiday Inn that night. The evidence in the record is conclusive and irrefutable as to that. Donna Duckworth describes the chronology of how they spent that day. They got up on his boat. They stayed on the boat until about 5 o'clock. They went to the Holiday Inn and had drinks. Nothing happened there. The victims were not there. They went back to their boat. Even more to the point, and I refer to the court because I think this is the most important thing that disposes of that argument by the state, which is at Supplemental Appendix 1578. Sidney Jeffrey, the courier, is in the Holiday Inn bar between 6 p.m. and 8 p.m. when he later goes and meets the detournees at Denny's. And he's asked, who else was in the bar? And he says, no one. If the detournees were there meeting with Marzino or Kaminsky or anybody else, he would have said that. He was their friend. He was their courier. The detournees were not in the Holiday Inn. They did not meet with Kaminsky at any time on the 18th. There's no proof. Isn't there some testimony that one of them would not have gone to the Holiday Inn? There was even that testimony, which was Nick had long red hair, a huge beard. He looked like a hippie. He was afraid that if he went there, he would bring the attention of law enforcement on him. And they have three kilos stashed under a bed up in the third-floor bedroom. Now, I can't – I just ran out of time. I can't fully address this, but the state submitted a supplemental brief where they said that there's a waitress that identified the detournees as having been in the night before and to try to undercut their own witnesses' claim that Nick never went into the Holiday Inn. I'd ask the court to take a look at her description of the people she saw there. She describes the man as light brown hair, no distinct facial features. Nick has bright red hair and a huge, bright red Santa Claus beard. If I could just then take a minute to close. Well, go ahead. Go ahead. To paraphrase another person, a person who is wrongly imprisoned clings to hope like a drowning man clings to a plank. Well, you know, this is not a jury. That's not helpful.  You're actually going to be citing as the Kipling in Kafka. This does have elements of Kafka attached to it. We understand your argument. There is a terrible injustice that needs to be corrected. It was an injustice that was caused by the state filing. We understand your argument. Thank you very much. Thank you, Your Honor. Do you want to take about a five-minute break?